**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER PLATO NISSEN,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. 1:15-cv-00853-SMS<br><br>ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS |

Plaintiff Peter Nissen seeks review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act (42 U.S.C. § 301 *et seq.*) ("the Act"). The matter is before the Court on the parties' cross-briefs, which were submitted without oral argument. For the reasons discussed below, the Court affirms the decision of the Administrative Law Judge ("ALJ").

I.     PROCEDURAL HISTORY AND FACTUAL BACKGROUND

A. *Procedural History*

Plaintiff applied for DIB on October 19, 2011, alleging disability beginning on March 20, 2005. AR 57, 147.[1] The Commissioner denied the claim on January 20, 2012, and upon reconsideration, on September 6, 2012. AR 91, 97. Plaintiff then timely requested a hearing before

---
[1] "AR" refers to the Administrative Record.

1

an ALJ.  AR 102.

Plaintiff appeared and testified before an ALJ, Serena S. Hong, on September 11, 2013.  Also at the hearing were Plaintiff's counsel and an impartial vocational expert ("VE").  AR 28.  In a written decision dated November 1, 2013, the ALJ found Plaintiff was not disabled under the Act from March 20, 2005 through December 41, 2010, his last date insured.  AR 23.  On April 8, 2015, the Appeals Council denied review of the ALJ's decision, which thus became the Commissioner's final decision, and from which Plaintiff filed a timely complaint.  AR1; Doc. 1.

B.  *Factual Background*

The Court will not recount in detail all the facts of this case, discussing only what is relevant to this appeal.

1.  Plaintiff's Work History

Plaintiff's Work History Report indicates he had worked as a truck driver for a feed company for about fourteen years, from April 1991 to February 2005.  Plaintiff performed the job twelve hours per day, six days a week.  The job required walking, standing, sitting, climbing, stooping, reaching, and writing/typing/handling small objects.  He frequently lifted 50 pounds, the heaviest being 100 pounds.  AR 174-175.

2.  Medical Evidence

Records show that from June 2005 to June 2011, Plaintiff sought treatment from Dr. Robert Tanaka and others with the Sutter Goud Medical Foundation for various conditions.  These included low back pain, hypertension, recurrent hernia, nail fungal infection, skin lesions, increased blood pressure, gastritis, dermatitis, obesity, sinus problems, upper respiratory infection, foot pain, and gout.  AR 264-343.

Plaintiff underwent a number of successful procedures: (1) low back surgery by Dr. Alexander Davis in May 2006, (2) hernia surgery by Dr. Rodolfo Agbunag in August 2007, and (3) cataract extraction of both eyes by Dr. John Latham in December 2008 and March 2009.  AR

2

234-237, 246-247, 251-253, 256.

At Plaintiff's first post-surgical follow up with Dr. Davis in mid-May 2006, he reported tolerable low back pain and some numbness in the right shin and tips of the toes. The pain in his buttocks and thighs when walking was gone. He, was, however, taking pain medication. Dr. Davis told Plaintiff he could walk and lift 10 pounds but not engage in heavy work on the farm. AR 392. At the second follow up, Plaintiff reported his pain had diminished significantly, with no pain down the legs, and he could walk farther. There was, however, some numbness in his feet. Dr. Davis advised Plaintiff about driving and bending down. AR 402. At the third follow up in June 2006, Plaintiff reported being able to walk a mile and a half, being more active around his farm, a little ache in the back, and no longer taking medication. Dr. Davis observed Plaintiff's back was benign, with the wound healing normally, and advised Plaintiff he could drive and lift 25 pounds. AR 391. At the fourth post-surgical follow in July 2006, Plaintiff reported he no longer felt pain down his legs, tightness in the low back had improved, and he had stopped taking medications. He could work on his farm without much difficulty, except for a slight tingling at the bottom of his left foot. Dr. Davis found the wound was well healed and advised Plaintiff not to lift more than 40 pounds. AR 390. At the fifth follow up in November 2006, Plaintiff reported occasional low back pain after working, though the pain did not last. He was able to "walk all over [the] farm and has no leg pain" and did not require medication. Dr. Davis noted the surgery wound had healed well and advised Plaintiff to engage in activities as he could tolerate, with no specific restrictions. AR 389.

Then, in September, November, and December 2011, Plaintiff complained to Dr. Gray of ongoing low back pain. AR 407, 409, 411. Also in December 2011, Dr. Davis examined and discussed with Plaintiff his imaging studies, and explained that spinal surgery was advisable. AR 387. Plaintiff was advised to engage in conservative treatments such as epidural steroid injection, physical therapy, and weight loss. He agreed that if his symptoms do not improve, surgical evaluation would be appropriate. AR 387-388.

A few months before the hearing, in August 2013, Dr. Gray completed a physical assessment of Plaintiff's ability to perform work-related activities. In a check the box form, Dr. Gray indicated Plaintiff could frequently lift or carry up to 10 pounds, occasionally lift 11-20 pounds, but never lift 20-100 pounds. He could sit for two hours with a break every hour and walk for one hour with a break every 20 minutes. He could never perform any postural activities. He could occasionally reach, frequently handle, feel, push/pull, and continuously hear and speak. He needed to avoid exposure to heights. AR 429. On the mental side, Plaintiff had no limits to occupational, performance, and personal/social adjustments. AR 428-430.

3. <u>Plaintiff's Written Testimony</u>

In his first disability report, undated, Plaintiff stated the following injuries limited his ability to work: back injury, limited vision, arthritis, gout, and high blood pressure. AR 162. His was, at the time, taking various medications to address problems with circulation, blood pressure, back pain, gout, post-surgery pain, and to relax his muscles. AR 166.

In a December 2011, pain questionnaire Plaintiff explained in detail the effects of his chronic back pain which allegedly began in 2005 and for which he took ibuprofen on a daily basis. Specifically, the pain limited him to short walks and drives and minimal chores, as he needed to stop an activity every half hour. He could no longer drive a truck or engage in activities associated with the job. Plaintiff used no assistive device to relieve the pain. AR 181-183.

In Plaintiff's second disability report, which accompanied his request for reconsideration of the Commissioner's denial, he reported worsening back pain beginning in late 2007. He had continued to see Dr. Davis and Gray for back treatment, with the latter also treating his blood pressure and gout problems. He could not sit, stand, and walk for long periods, and did not get sufficient exercise. AR 188-191. Plaintiff's second pain questionnaire, completed in June 2012, contained similar complaints of his back pain and its effects. However, his condition worsened such that he had to stop an activity every few minutes. His ability to engage in certain activities also

changed, for better and for worse. AR 194-196.

Plaintiff's final disability report, completed in September 2012, indicated worsening of the back pain, gout, and vision since June 2011. His back and right foot pain were triggered by sitting and standing in one position for long, and bending, climbing, and pulling caused discomfort. He continued to see Dr. Gray, who prescribed medications for gout, head pain, blood pressure, and cholesterol. AR 201-203.

4. <u>Plaintiff's Testimony Before the ALJ</u>

At the time of the hearing, Plaintiff was 60 years old and living with his wife. He had a tenth grade education and a driver's license. He testified about his last job as a truck driver, noting the heaviest thing he lifted was 75 to 80 pounds. His low back pain, right foot gout, vision, high blood pressure, high cholesterol, and low back pain prevented him from working. AR 33-37.

Plaintiff was seeing Dr. Gray at least every three months. Occasionally, he received epidural injections from a different physician. Plaintiff testified about Dr. Davis's opinion that another back surgery would not help . He also testified about his medications and their effects. AR 38-41.

Plaintiff described a typical day, which consisted of waking up, making coffee, getting his wife up, taking a walk outside, and watching television. He did light household chores but no yardwork, and shopped on Saturdays. He also walked the dog. AR 41-43.

At one point, the ALJ noted a gap in Plaintiff's medical records concerning his back pain, specifically from the time he had his surgery in 2006 until 2011 when he began complaining about back pain to Dr. Gray. She explained to Plaintiff that to be eligible for disability insurance, there must be a finding of disability which began before December 31, 2010. Plaintiff did not provide a meaningful response regarding the lack of medical records but stated that he had always reported his back problems to Dr. Tanaka. He explained, however, that between the time of his back surgery and 2010, he had problems standing and walking. He could stand for an hour before needing to change positions, lift and carry up to 20 pounds, and struggled to bend down. He did not think he could

obtain a job given his age and conditions. Plaintiff stated his back never returned to normal after the surgery. The ALJ agreed to leave the record open to allow Plaintiff to submit reports from Dr. Tanaka. AR 44-50.

5. <u>Vocational Expert Testimony</u>

The VE, Cheryl Chandler, classified Plaintiff's past work as a truck driver at the level of "heavy" based on the material he was hauling, with a corresponding SVP of 4.[2] AR 51-52.

The ALJ posed a number of hypotheticals for the VE. She first directed the VE to assume a person of the same age, education and past work experience as Plaintiff, who could work at the medium exertional level and is limited to frequent postural maneuvers (i.e., stooping, crouching, and crawling). She asked the VE whether such person could perform Plaintiff's past work, to which the VE replied yes under both the Dictionary of Occupational Titles and as he performed them. Next, the ALJ asked the VE to consider the same person but who could work only at the light exertional level and is limited to occasional postural maneuvers. When asked if such person could perform Plaintiff's past work, the VE said no. However, the individual could perform other work in the national economy. AR 52.

The ALJ posed a third hypothetical, this time asking the VE to consider the same person in the second hypothetical, but who needs to change positions about every hour. The VE opined that such person could work as a cashier, counter clerk, or courier. Finally, the ALJ asked the VE to consider the same person in hypothetical three, but who would be off-task 15 percent of the time due to unscheduled breaks. When asked if such person could perform any job, the VE replied no. AR 53-54.

---

[2] "'SVP' refers to the 'specific vocational preparation' level which is defined in the DOT as 'the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.' *Dictionary of Occupational Titles,* Appendix C, page 1009 (4th ed.1991)." *Bray v. Comm'r of Soc. Sec. Admin.* 554 F.3d 1219, 1230 (9th Cir. 2009).

Plaintiff's attorney also questioned the VE, asking her to consider a person who could lift 10 pounds frequently and 20 pounds occasionally; sit for two hours a day with a break after one hour; walk for one hour a day; occasionally reach, never climb, balance, stoop, crouch, kneel or crawl; must avoid exposures to heights; and needs a break every 20 minutes. He asked the VE if such person could perform Plaintiff's past work, to which she said no, "past or otherwise." AR 54-55.

6. <u>ALJ's Decision</u>

A claimant is disabled under Titled II if he is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of no less than twelve months. 42 U.S.C. §§ 423(d)(1)(A). To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process which an ALJ must employ to evaluate an alleged disability.[3]

The ALJ here employed the five-step sequential process and found Plaintiff was not disabled under the Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 20, 2005 through his last insured date of December 31, 2010. At step two, Plaintiff had the following severe impairments: degenerative disc disease status post fusion and status post hernia repair. At step three, Plaintiff did not have an impairment or

---

[3] The ALJ must determine: "(1) whether the claimant is doing substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity, the claimant can still do his or her past relevant work; and (5) whether the claimant can make an adjustment to other work." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (quotations, citations and footnote omitted); 20 C.F.R. §§ 404.1520 (2011). Residual functional capacity is "the most" a claimant "can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1) (2011). "The claimant carries the initial burden of proving a disability in steps one through four of the analysis. However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

combination of impairments that met or equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Based on the record, Plaintiff had the residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R. 404.1567(c), except he can only frequently climb, balance, stoop, kneel, crouch, and crawl.  At step four, the ALJ found Plaintiff was capable of performing past relevant work as a truck driver as it is generally performed.  Consequently, the ALJ found Plaintiff was not disabled from March 20, 2005 through his last insured date of December 31, 2010.  AR 19-23, 57.

## II.    DISCUSSION

A.  *Legal Standards*

This Court reviews the Commissioner's final decision to determine if the findings are supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 401 (1971)), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401. "If the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the Commissioner.  However, we must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal citation and quotations omitted).  "If the evidence can support either outcome, the Commissioner's decision must be upheld." *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003); *see* 42 U.S.C. § 405(g) (2010).  But even if supported by substantial evidence, a decision may be set aside for legal error. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

Nevertheless, an ALJ's error is harmless "when it was clear from the record that [the] error was inconsequential to the ultimate nondisability determination." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006).

B.  *Analysis*

Plaintiff seeks reversal of the Commissioner's decision on the sole issue of the ALJ's treatment of Dr. Davis's opinion.  Plaintiff argues that while assigning great weight to Dr. Davis's opinion concerning Plaintiff's lifting capability, the ALJ's RFC determination in fact contradicts the opinion.  Specifically, Plaintiff points to Dr. Davis's recommendation in June and July 2006 that Plaintiff could lift 25 and no more than 40 pounds, respectively, yet the ALJ determined Plaintiff could perform medium work which involved lifting no more than 50 pounds.[4]  This, asserts Plaintiff, was an implicit rejection of Dr. Davis's opinion and warranted an explanation.  The Commissioner contends Plaintiff's argument "is factually wrong" because the ALJ also discussed Dr. Davis's November 2006 post-surgical follow up which stated Plaintiff had no specific restrictions.  She further contends Plaintiff is not entitled to DIB because he failed to provide medical records showing his conditions were disabling within the insured period.

As an initial matter, the Commissioner's account of the ALJ's written decision is inaccurate.  Indeed, the ALJ cited to and discussed the November 2006 follow up.  She expressly recounted that Plaintiff no longer required medications and that he could walk all over the farm without leg pain, as he had reported to Dr. Davis.  She did not, however, expressly recount Dr. Davis's advice that Plaintiff had no specific restrictions.  AR 21.  But this omission does not negate her adoption of the opinion as a whole given the statement that she "gives great weight to Dr. Davis as the treating physician," whose opinions are "consistent with the clinical findings and his treatment records."  AR 21.  *See*, *e.g.*, *Phothikham v. Astrue*, 2011 WL 1362079, at *6 (C.D. Cal. Apr. 11, 2011) (No. CV

---

[4]  Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds," 20 C.F.R. § 404.1567(c).

09-5859 JC) (concluding that where the ALJ expressly noted a third party statement, summarized its content, and stated it had been considered, the ALJ was not required to discuss every detail of that statement).[5]

Plaintiff is correct that at the June and July 2006 follow ups, Dr. Davis advised Plaintiff he could lift 25 pounds and not to lift more than 40 pounds, respectively. But this was no longer the case four months later. As noted, and contrary to Plaintiff's assertion, July 2006 was not Dr. Davis's last assessment of Plaintiff. Again, at the November 2006 follow up, Plaintiff reported that the occasional low back pain he felt after work did not last, that he no longer took medications, and that he could walk all over the farm without leg pain. Importantly, during the follow up, Dr. Davis noted the surgery wound had healed well and advised Plaintiff he could engage in activities to the extent tolerable, with no specific restrictions. In essence, Dr. Davis did not set a numerical limitation on how much Plaintiff could lift so long as he could manage. And an advisement of no quantifiable limitation on lifting does not equate to an inability to perform medium work.

It logically follows then that Dr. Davis's November 2006 opinion did not undermine the RFC determination. The ALJ could, without contradiction, adopt Dr. Davis's opinion and find that Plaintiff could perform medium work. She was therefore not required to explain an opinion which she did not reject. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (explaining that to reject a treating physician's opinion which is contradicted, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record; if the opinion is uncontradicted, clear and convincing reasons must be given).

Furthermore, as the Commissioner correctly asserts, Plaintiff's medical records before his last insured date of December 31, 2010, do not suggest a disabling condition. While his low back pain allegedly prevented him from working, the surgery greatly improved his pain and movement. It

---

[5] This unpublished decision is citable under Rule 32.1 of the Federal Rules of Appellate Procedure. *See also* 9th Cir. R. 36–3(b).

was not until 2011 that he began complaining about the pain again.  And while evidence of physical limitations after December 31, 2010, are helpful, Plaintiff must show a disabling condition before his last insured date.  *See Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) ("In determining the ultimate issue of disability, claimant bears the burden of proving she is disabled. She must prove that she was either permanently disabled or subject to a condition which became so severe as to disable her prior to the date upon which her disability insured status expires.") (citations omitted).  And that he did not do.

Finding the ALJ did not err in her treatment of Dr. Davis's opinion in the RFC determination, the Court need not address Plaintiff's discussion of harmless error.

### III.   CONCLUSION

Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.   The Clerk of Court is DIRECTED to enter judgment in favor of the Commissioner and against Plaintiff Peter Plato Nissen.

IT IS SO ORDERED.

Dated:   **July 13, 2016**                      /s/ Sandra M. Snyder
                                                UNITED STATES MAGISTRATE JUDGE